The Honorable Richard Simmons State Representative 1751 CR 508 Rector, AR 72461-8010
Dear Representative Simmons:
You have requested an Attorney General opinion concerning the purchase of credited service in the Arkansas Public Employees' Retirement System (APERS) on behalf of a city clerk.
You indicate that service was purchased for the years 1991-1997, and the amount paid for the service was $14,990.59. The city water and sewer department paid half of this amount and the city general fund paid the other half. However, the city council did not authorize the payments from either of these funds. The purchase was initiated and completed after the city clerk was defeated in the regular election (November, 1998), but before the clerk's term expired on December 31, 1998.
In light of these facts, you have presented the following questions:
 (1) Can retirement credits be purchased using any account within the city budget?
 (2) Can retirement credits be purchased using city funds without the authorization of the city council?
 (3) What recourse does the city have for the return of these funds and action against those who approved these unauthorized payments?
 (4) Can retirement credits be purchased for one city employee without purchasing retirement credits for all city employees?
 (5) Can retirement credits in the amount of $17,030.83 be purchased for a city employee in one lump sum payment without the approval of the city council?
 (6) Is it a legitimate city expenditure to purchase prior years of service credits from APERS when such a purchase had never been made before, and when the purchase was initiated and completed only after the city official was defeated in the regular election, but before her term expired?
RESPONSE
Question 1 — Can retirement credits be purchased using any account withinthe city budget?
It is my opinion that the answer to this question will depend upon the provisions of the city's own ordinances. It is not an issue that is addressed by state law. That is, state law does not dictate the particular account out of which a purchase of credited service in APERS must be paid. The city must, of course, be mindful of the following limitation stated in A.C.A. § 14-58-203:
 (b) The [municipal] governing body may alter or revise the budget and unpledged funds appropriated by the governing body for any purpose may be subsequently, by action of the governing body, appropriated to another purpose, subject to the following exceptions:
 (1) Funds resulting from taxes levied under statutes or ordinances for specific purposes may not be diverted to another purpose;
 (2) Appropriated funds may not be diverted to another purpose where any creditor of the municipality would be prejudiced thereby.
A.C.A. § 14-58-203(b).
Under the provisions of the above-quoted statute, the city clearly has the authority to determine which accounts it will use for a given expenditure, subject to the conditions stated in the statute. Beyond the limitation of those conditions, the only limitations on the use of the various city accounts for particular expenditures would arise out of local ordinances.
Question 2 — Can retirement credits be purchased using city funds withoutthe authorization of the city council?
It is my opinion that the city council must appropriate all funds that are spent by the city. In that sense, then, retirement credits cannot be purchased using city funds without the authorization of the city council. However, the mayor does have the authority to approve the payment of funds under a certain amount without the direct authorization of the city council, provided that the funds for such an expenditure have been appropriated by the city council. These conclusions are explained more fully below.
All appropriations of city funds require the approval of the city council. This requirement is stated in A.C.A. § 14-55-204, as follows:
 All bylaws, ordinances, resolutions, or orders for the appropriation of money shall require for their passage or adoption the concurrence of a majority of the aldermen of any municipal corporation.
A.C.A. § 14-55-204.
Thus, all funds that will be paid out by the city must be appropriated by the city council. However, certain specific expenditures below an amount established by the city council can be made without the direct approval of the city council (assuming that the funds for such expenditures have been appropriated by the city council). The authority for expenditures of this nature is stated in A.C.A. § 14-58-305, as follows:
 (a) In a city of the first-class, the mayor or his duly authorized representative may approve for payment out of funds previously appropriated for that purpose, or disapprove, any bills, debts, or liabilities asserted as claims against the city.
 (b) The municipal governing body shall, by ordinance, establish in that connection a maximum amount, and the payment or disapproval of such bills, debts, or liabilities exceeding that amount shall require the confirmation of the governing body.
A.C.A. § 14-58-305.
It is clear from the above-quoted statutes that expenditures by cities must, in the first instance, be appropriated by the city council. The council also has the authority to determine a maximum amount above which they must approve the expenditure, even if previously appropriated. These statutes indicate that the city council has primary and ultimate authority to approve or disapprove expenditures. But they also indicate that some expenditures of appropriated funds can be made without the city council's direct approval.
Accordingly, I must conclude that in order for retirement credits to be purchased using city funds, the city council must have appropriated the funds for such a purchase. The question of whether the purchase can be made without the direct approval of the city council will depend on whether the amount of the expenditure for the purchase exceeds the amount established by the city council (pursuant to A.C.A. § 14-58-305) above which it must directly approve expenditures. It should be noted that even if the purchase amount does not exceed that amount (and can thus be made without direct city council approval), the purchase cannot be made without the mayor's approval (and in the absence of an appropriation by the city council).
Question 3 — What recourse does the city have for the return of thesefunds and action against those who approved these unauthorized payments?
I am unable to answer this question without more specific information about the situation and who was responsible for the unauthorized payment. In addition, the matter of what action is taken in response to this situation is a strategic one, best undertaken in consultation with the city attorney.
I will note that both elected and appointed officials of a city are subject to removal under certain circumstances, as provided by A.C.A. §14-42-109, which states:
 (a)(1)(A) If the mayor or police judge, member of the city council, or any other elective officer of any city of the first class or second class or incorporated town in this state shall willfully and knowingly fail, refuse, or neglect to execute, or cause to be executed, any of the laws or ordinances within their jurisdiction, they shall be deemed guilty of nonfeasance in office.
 (B)(i) It shall be the duty of the circuit court of any county within which any officer may be commissioned and acting, upon indictment charging any such officer with nonfeasance in office, to hear and determine the charges.
 (ii) If upon hearing the charges are proved to be true, the court shall enter a judgment of record removing the guilty officer from office.
 (2) The council of any city or incorporated town may provide, by proper ordinance, for the removal of any appointive officer upon a majority vote of the council.
 (b)(1) Upon the entering of judgment as provided in subsection (a)(1) of this section, the office of mayor or police judge shall become vacant.
 (2)(A) It shall be the duty of the clerk of the circuit court to immediately make out and deliver to the Governor a true and certified copy of the judgment.
 (B) Thereupon, it shall be the duty of the Governor to at once appoint and commission a mayor or police judge for the city or town to fill the vacancy until his successor is elected at the next regular election and qualified.
 (c) Any mayor or police judge so removed from office shall have the right of appeal to the Supreme Court of the state. However, no appeal shall have the effect of suspending the judgment of removal of the circuit court. If the judgment is reversed, it shall have the effect of reinstating the officer to his office.
A.C.A. § 14-42-109.
Depending upon the specific facts of the situation, recourse may be available under the above-quoted statute. In addition, the facts of the situation may warrant recovery under the clerk's surety bond.
Question 4 — Can retirement credits be purchased for one city employeewithout purchasing retirement credits for all city employees?
It is my opinion that retirement credits in APERS can be purchased for one city employee without purchasing retirement credits for all city employees.
My conclusion regarding this matter is based upon the fact that the provisions authorizing purchased credit by municipal employees state particular requirements and conditions for such purchases. See A.C.A. §24-4-723 and A.C.A. § 24-4-724. All employees would not necessarily meet those requirements and conditions. It therefore would not be feasible for a city to have a broad policy treating all employees alike in this regard. All employees are not similarly situated, and therefore are not all entitled to purchase credit in APERS. Accordingly, cities are not in a position to purchase credit in APERS for all employees.
For this reason, decisions to purchase credited service must be made separately for each employee, giving consideration to whether the requirements and conditions of A.C.A. § 24-4-723 and A.C.A. § 24-4-724
are met.
Question 5 — Can retirement credits in the amount of $17,030.83 bepurchased for a city employee in one lump sum payment without the approvalof the city council?
See response to Question 2.
Question 6 — Is it a legitimate city expenditure to purchase prior yearsof service credits from APERS when such a purchase had never been madebefore, and when the purchase was initiated and completed only after thecity official was defeated in the regular election, but before her termexpired?
It is my opinion, as explained more fully below, that such a purchase could be legitimate under state law, assuming that the city is a participating employer in APERS, and assuming that the purchase otherwise complies with all requirements of city law and ordinances. It is my understanding that the city about which you have inquired is a participating employer in APERS. The fact that a purchase of this nature had never been made before does not impact on the legality of the purchase. Similarly, the fact that the purchase was made after the city official in question was defeated in the regular election but before her term expired does not render the purchase illegal under state law.
It is my opinion that under state law, a city that is a participating employer in APERS may make the required payments for the purchase of credited service in APERS for city employees. City ordinances, of course, must be examined to determine whether they would prohibit such an expenditure. Although state law does not explicitly address this issue, it clearly does not prohibit an expenditure of this nature, assuming that the funds were duly appropriated. The statutes authorizing the purchase of credited service by municipal employees require the employee "to pay, or cause to be paid" the amount required for the purchase. See A.C.A. §24-4-723 and -724. This language plainly allows the payment to be made by a person or entity other than the employee himself or herself. Moreover, although state law does explicitly specify the subject of retirement pensions as being "state affairs" rather than "municipal affairs," it goes on to authorize cities to act upon such state affairs as long as the cities' acts with regard to such matters do not conflict with state law on the same subject. See A.C.A. § 14-43-601. Because state law does not prohibit such expenditures by cities, a city's act of making such a payment does not conflict with state law. Accord, Op. Att'y Gen. No.96-127.
The requirements of A.C.A. § 24-4-723 and A.C.A. § 24-4-724 do not include any mandates concerning the particular point in an elected official's term when credited service must be purchased, nor does that statute's authorization to purchase credited service apply only in circumstances where similar purchases have been made before.
If the requirements of A.C.A. § 24-4-723 and A.C.A. § 24-4-724 were met, and if the purchase was otherwise authorized as required by both state law and city ordinance, the purchase was legal.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh